UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT DAVIS,

                              Plaintiff,

      - v -                                    Civ. No. 9:04-CV-1480
                                                           (DNH/RFT)

ROBERT DENNISON, Chairman and 19th Member
of the New York State Board of Parole,

                              Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| ROBERT DAVIS<br>Plaintiff, *Pro Se*<br>81-C-0288<br>Elmira Correctional Facility<br>P.O. Box 500<br>Elmira, NY 14902 | |
| HON. ELIOT SPITZER<br>Attorney General for the State of New York<br>Attorney for Defendant<br>The Capitol<br>Albany, NY 12224 | NELSON SHEINGOLD, ESQ.<br>Assistant Attorney General |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Robert Davis brings a civil action pursuant to 42 U.S.C. § 1983, alleging violations of his liberty interest under the Due Process Clause of the Fourteenth Amendment when he was denied parole release. Dkt. No. 6, Am. Compl. at ¶¶ 35-38. Defendant Robert Dennison, Chairman and 19th Member of the New York State Board of Parole, brings this Motion to Dismiss. Dkt. No. 13. Plaintiff opposes the Motion. Dkt. No. 16. For the reasons to follow, it is recommended that the Motion to Dismiss be **granted**.

## I. FACTS

The following facts are derived from the Amended Complaint, which, on a motion to dismiss, must be taken as true. *See infra* Part II.A. Plaintiff is currently serving a sentence of twenty-five (25) years to life. Am. Compl. at ¶ 14. On October 7, 2003, Plaintiff went before the parole board for the first time. *Id.* At that time, two female agents reviewed Plaintiff's prison record and adjourned the hearing until a psychiatric evaluation was conducted. *Id.* at ¶ 15. The hearing resumed on November 4, 2003, with two male agents replacing the two previous female agents. *Id.* at ¶ 16. Defendant Dennison was one of the two male agents. *Id.* During the November 4th hearing, Plaintiff had been interviewed through "some type of television parole system" instead of in-person. *Id.* at ¶ 17, Ex. A-2. As a result, Plaintiff was unable to present documentary evidence in support of his release and when Plaintiff questioned Defendant Dennison about his qualifications, Dennison stated he did not have to answer Plaintiff's questions. *Id.* at ¶¶ 18 & 19.

After several days had passed, Defendant Dennison and the other agent sent to Plaintiff a document in which Plaintiff's parole was denied due to his convicted crimes. *Id.* at ¶ 20. Plaintiff states that the criteria to determine parole should have been based on history and release plans, not convicted crimes. *Id.*, Exs. A-2 & B-1. In addition, Dennison and the other agent found no "statutory default in [Plaintiff's] 25 year incarcerated history." *Id.* at ¶ 21. The transcript of the parole hearing received by Plaintiff was tampered with and Defendant erased many of Plaintiff's words and substituted others. *Id.* at ¶ 23, Ex. A-4.

On November 13, 2003, Plaintiff filed an appeal to Defendant Dennison's office. *Id.* at ¶ 24. Plaintiff was ordered to perfect his appeal and file his brief by March 17, 2004. *Id.* Plaintiff forwarded the brief for appeal on February 26, 2004. *Id.* Then on July 8, 2004, the decision of the

Defendant and the other agent was affirmed, thus denying Plaintiff's release on parole. *Id.* at ¶ 25, Ex. E-1. Plaintiff states that one of the members on the board for his appeal was unqualified because that member's term had expired. *Id.* at ¶¶ 26 & 27. Plaintiff further states that Defendant Dennison and his agents "illegally" instituted the Governor's "parole-denial-beliefs" that parole should be abolished "for all convicted felons." *Id.* at ¶ 29.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998)); *see also Green v. New York State Dep't of Corr. Serv. et al.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). However, the court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nevertheless, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green*, 2003 WL 22169779, at

*1 (internal quotation marks and citations omitted) (alterations in original).

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (internal citations omitted). A "dismissal on the pleadings is *never* warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Id.* at 128.

### B. Eleventh Amendment

Plaintiff brings suit against Defendant Dennison in his individual and official capacity. Am. Compl. at ¶ 13. Plaintiff seeks a declaratory judgment, injunctive relief, as well as punitive damages against this Defendant in his individual and official capacity. *Id.* at Relief.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity. *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2000). The state's immunity extends to state officials "act[ing] on behalf of the state" when the state is the "real, substantial party in interest." *Id.* at 69-70 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.*, 506 U.S. 139, 142-47 (1993) & quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). Moreover, the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Therefore, Defendant Dennison cannot be sued in his official capacity in a claim for money damages. However, Davis may seek damages from him in his individual capacity. Furthermore, Plaintiff may sue Defendant Dennison for declaratory and injunctive relief in both his individual and official capacity because "official-capacity actions for prospective relief are not treated as actions against the State." *Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

### C. Absolute Immunity

Defendant Davis claims absolute immunity from a lawsuit in his individual capacity as Chairman for actions taken when serving on the panel that denied Davis parole. Dkt. No. 13, Def.'s Mem. of Law at p. 5.

Absolute immunity "applies only to a limited class of officials and functions." *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1991) (citations omitted) (extending absolute immunity to executive branch of a municipality). Courts must examine the "nature of the function performed" in assessing whether absolute immunity will attach. *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Whether a government official receives absolute immunity depends upon "the scope of the delegated discretion and whether the position entails making decisions of a judicial nature - i.e., decisions requiring the application of governing rules to particular facts, an exercise of reasoned judgment which could typically produce different acceptable results." *Id.* at 364 (internal quotation marks and citations omitted).

An official acting in a judicial capacity will be entitled to absolute immunity in a § 1983 action and that immunity will be a "complete shield to claims for money damages." *Montero v.*

*Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200) (1985)) (further citation omitted).  This type of absolute immunity "extends to administrative officials performing functions closely associated with the judicial process because the role of the 'hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge.'" *Id.* (quoting *Butz v. Economou*, 438 U.S. 378, 513 (1978)) (further citations omitted) (omission in original).  The Second Circuit, joining other sister circuits, stated that "parole board officials, like judges, are entitled to absolutely immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny, or revoke parole." *Id.* at 761 (citing *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996); *Littles v. Board of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam); *Walrath v. United States*, 35 F.3d 277, 281-82 (7th Cir. 1994); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992); *Fuller v. Georgia State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988); *Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir. 1987); & *Anderson v. Boyd*, 714 F.2d 906, 908-10 (9th Cir. 1983)).  Furthermore, the "rank and title as 'Commissioner' does not, in and of itself, invalidate" the quasi-judicial role that would afford the parole board official absolute immunity.  *Id.*  This is the case because "the level of immunity 'flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official.'"  *Id.* (quoting *Cleavinger v. Saxner*, 474 U.S. at 201).

In addition, as absolute immunity bars a claim for damages, it is also applicable to injunctive relief.  Section 1983 states, in part, that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.  Here,

Plaintiff does not allege that a declaratory decree was violated nor does he state that declaratory relief was unavailable. *See Salem v. Paroli,* 260 B.R. 246, 254 (S.D.N.Y.2001) (dismissing a § 1983 claim for injunctive relief because declaratory relief was available through appeal in state court).

Therefore, since Defendant Dennison was serving in a quasi-judicial function in his capacity as both the Commissioner and as a parole board member, Defendant Dennison is entitled to absolute immunity as to the claims for damages and injunctive relief. Thus, it is recommended that the Motion to Dismiss be **granted**. In light of this recommendation, and in light of Plaintiff's *in forma pauperis* status, we further recommend dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), which grants to the Court authority to dismiss an action at any time if the Court determines that the action "seeks monetary relief against a defendant who is immune from such relief."

Although Plaintiff's claims are barred by the doctrine of absolute immunity, this Court, nevertheless, will address the merits of Plaintiff's allegations in the alternative.

### D.  *Wilkinson v. Dotson*

Plaintiff claims that his due process rights were violated due to outdated and illegal parole procedures that were in place during his parole hearing. Compl. at ¶¶ 35-38. Plaintiff seeks a declaratory judgment that proper procedures were not followed, injunctive relief, which in part seeks his release to parole supervision, and monetary damages. *Id.* at Relief.

The Supreme Court has held "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 1245 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *see also Edwards v.*

*Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974).  Thus, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. at 500.  The Supreme Court did note an exception to that rule as prisoners "*could* use § 1983 to obtain a declaration . . . that . . . procedures were invalid" and inmates "could also seek 'by way of ancillary relief[,] an otherwise proper injunction enjoining the *prospective* enforcement of invalid prison regulations.'" *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. at 1246-47 (quoting *Wolff v. McDonnell*, 418 U.S. at 555) (emphasis in original). This would be so because "[i]n neither case would victory . . . necessarily have meant immediate release or a shorter period of incarceration" as the attack would only be on the "'wrong procedures, not . . . the wrong result[.]'" *Id.* at 1247 (quoting *Heck v. Humphrey*, 512 U.S. at 483).

Therefore, a prisoner challenging the constitutionality of the state's parole procedures may bring a § 1983 action instead of a *habeas corpus* petition when seeking declaratory and injunctive relief if a successful challenge in "the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. at 1247-48 (holding that two prisoners could bring suit under § 1983 to challenge "state procedures used to deny parole eligibility . . . and parole suitability" because it would entitle them to either a new parole application or parole hearing but not necessarily a speedier release as neither sought an injunction for release) (emphasis in original).[1]

---

[1] In an unpublished opinion, the Second Circuit concurred with the Supreme Court in *Wilkinson v. Dotson* and remanded back a § 1983 claim to the district court where an inmate challenged procedures at his parole hearing which included that his hearing was not conducted in person, but rather through a "techno screen" instead of stating that the

In this case, Plaintiff may proceed with a § 1983 action in regards to his challenge of the procedures in his parole hearing. Plaintiff may seek declaratory and injunctive relief in the § 1983 action, but cannot seek injunctive relief for an immediate or speedier release. *See id.* at 1247-48 (citing *Edwards v. Balisok*, 520 U.S. at 646 & 648). Here, in one subsection of Plaintiff's request for injunctive relief, he seeks to be released. Compl. at Relief, ¶ (B)(6). Plaintiff cannot assert that relief as it must be brought within the context of a *habeas* petition since Plaintiff cannot show that the parole denial was subsequently declared invalid. *See Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. at 1245; *Preiser v. Rodriguez*, 411 U.S. at 500; *Heck v. Humphrey*, 512 U.S. at 486-87.

### E. Due Process Claims

Plaintiff claims that his due process rights were violated in the following ways: 1) the parole board used video-conferencing instead of conducting an in-person hearing, which did not allow Plaintiff to present documentary evidence; 2) he is constitutionally entitled to release as Defendant Dennison did not follow the "statutory and regulatory parole scheme;" 3) the transcript of the hearing was tampered with as words were deleted and/or added; and 4) the members hearing Plaintiff's appeal were unqualified. Compl. at ¶¶ 35-38.

The Due Process Clause of the Fourteenth Amendment states that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. It is well-established that a prisoner who has been lawfully incarcerated will only have "a narrow range of protected liberty interests." *Morris v. Dann*, 1996 WL 732559, at *3 (N.D.N.Y. Dec. 11, 1996). The Supreme Court has stated that "the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its

---

claim had to be brought as a *habeas* petition. *Yourdon v. Johnson*, 128 Fed. Appx. 833, 834 (2d Cir. Apr. 28, 2005).

prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Benjamin v. Fraser*, 264 F.3d 175, 189 (2d Cir. 2001). Therefore, in order to succeed on a § 1983 claim based on the Fourteenth Amendment, the prisoner would have to prove "a deprivation of a liberty interest protected by the Due Process Clause itself, or a violation of a state-created liberty interest." *Morris*, 1996 WL 732559, at *3.

The Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Therefore, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citing *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. at 11-13). The possibility that parole may occur does not create a constitutionally protected liberty interest. *Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex*, 442 U.S. at 11; *Barna v. Travis*, 239 F.3d at 171. Since there is no liberty interest created from the Due Process Clause itself, the Court must determine if New York State created a liberty interest in parole.

It is well settled that New York State's "parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna v. Travis*, 239 F.3d at 171. New York statute states that a parole board has "the power and duty of determining which inmates serving an indeterminate or determinate sentence of imprisonment may be released on parole . . . and when and under what conditions." N.Y. EXEC. LAW § 259-c(1). The parole board establishes its own written guidelines for use in making its parole decisions. *Id.* at § 259-c(4). The purpose of the guidelines "is to

structure [the board's] discretion with regard to [minimum periods of imprisonment] and release decisions. . . . [And] they are based on only two major factors--crime severity and past criminal history. They are intended only as a guide, and are not a substitute for the careful consideration of the many circumstances of each individual case." N.Y. COMP. CODES R. & REGS. tit. 9, § 8001.3(a). The New York State statute on parole provides, in part, that:

> [d]iscretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the guidelines . . . require that the following be considered: (I) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

N.Y. EXEC. LAW § 259-i(2)(c)(A).

Consequently, the Second Circuit holds that "'[i]t is apparent that New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist . . . . [N]o entitlement to release is created [by the parole provisions]'" and therefore there is no liberty interest created and the Due Process Clause is inapplicable. *Barna v. Travis*, 239 F.3d at 171 (quoting *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979) (alterations in original)).[2] Thus,

---

[2] In addition, it has been held that the use of teleconferencing in parole hearings "is consistent with the statutory requirement that [a plaintiff] be personally interview[ed]." *Vanier v. Travis*, 711 N.Y.S.2d 920, 921 (N.Y. App. Div., 3d Dep't 2000) (internal quotation marks and citation omitted); *see also Mack v. Travis*, 723 N.Y.S.2d 905, 906 (N.Y.

even construing Plaintiff's pleadings liberally, Plaintiff has failed to state a cause of action.[3]

Therefore, it is recommended that the Motion to Dismiss be **granted**.

### III.  CONCLUSION

For the reasons stated herein, it is

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 13) be **GRANTED** and the entire action be **DISMISSED** due to Defendant's absolute immunity and that the dismissal be pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and it is further

**RECOMMENDED**, in the alternative, that the Motion to Dismiss (Dkt. No. 13) be **GRANTED** and the entire action be **DISMISSED** on the merits; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

---

App. Div., 3d Dep't 2001).  Therefore, Plaintiff's claim on this issue has no merit.  Furthermore, Plaintiff stated he could not provide documentary evidence; however, the only document he sought to introduce was "proof that [he] was offered 20 years to life."  Dkt. No. 13, Def.'s Mem. of Law, Hr'g Tr. at p. 14.  This clearly had no relevance to his parole hearing as Plaintiff ultimately went to trial and received twenty-five years to life.  *Id.* at pp. 14-15.

[3] The Second Circuit stated, in an unpublished opinion, that even though there is no liberty interest created in New York's parole scheme, the ruling was based on the granting of discretionary authority to the Parole Board to either grant or deny parole, which is not unlimited.  *Rodriguez v. Greenfield*, 7 Fed. Appx. 42, 44 (2d Cir. 2001).  The discretion is not unlimited because the "Parole Board is required to consider various factors" set forth in N.Y. EXEC. LAW § 259-i.  However, the procedures used to make a determination to deny parole may be considered, in a violation of due process claim, when it has been shown to be declared invalid by the New York State Supreme Court.  *Id.* (holding that one parole denial had been subsequently declared invalid by the New York State Supreme Court and that the district court had failed to consider, in regards to that denial, that the Parole Board had failed to consider several facts set forth in N.Y. EXEC. LAW § 259-i).  Here, however, Plaintiff's parole denial has not been declared invalid and therefore Plaintiff could not challenge any factors not considered by the Parole Board.  Even if Plaintiff could challenge the Parole Board, a review of the hearing transcript shows that criteria created by the guidelines were considered.  *See* N.Y. EXEC. LAW § 259-i(2)(c)(A); Def.'s Mem. of Law, Ex., Hr'g Tr.  The two parole board members considered and questioned Plaintiff on 1) the crimes for which he was convicted; 2) the programs that Plaintiff was involved in prison, which included being a hospital porter, health aide, gym clerk, commissary clerk, and programming in sign language; 3) whether Plaintiff had any drug or alcohol problems; 4) the therapy Plaintiff was receiving; 5) Plaintiff's involvement in the armed forces; 6) infractions that occurred during his time in prison; and 6) Plaintiff's plans for the future including living arrangements and employment.  Def.'s Mem. of Law, Ex., Hr'g Tr.  Then a written decision was issued stating that although Plaintiff's completed programs were noted, Plaintiff did not complete the "violence programming" and that parole was denied because "to hold otherwise would so deprecate these hideous crimes as to diminish respect for the law."  Def.'s Mem. of Law, Ex., Hr'g Tr. at p. 20.  Thus, an examination of Plaintiff's prison record was completed and the parole board took into account the required criteria to assess release through parole.

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 9, 2006
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge